[Docket No. 7.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

DAVID L. BURG and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.,

    Plaintiffs,

    v.

MATTHEW PLATKIN, *et al.*,

    Defendants.

Civil No. 24-10076 (RMB/AMD)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

    About twenty states and the District of Columbia have enacted "red flag laws"—sometimes called Extreme Risk Protective Order laws—allowing courts to issue protective orders that prohibit a person from possessing a firearm if the court finds that person poses a threat of harm to himself or others.[1] New Jersey's red flag law, the Extreme Risk Protective Order Act of 2018 (ERPO), became effective in 2019. 2018 N.J. Sess. Law Serv. Ch. 35, § 17. It allows, among others, law enforcement officers to seek a court order and a search warrant to temporarily remove firearms from a person who poses an immediate and present danger to himself or others. N.J. Stat. Ann. §§ 2C:58-23(a), -26.

    After an alleged road rage incident involving Plaintiff David L. Burg and another motorist where Burg brandished his pistol, the New Jersey State Police sought, and obtained, an ERPO temporary protective order against Burg to strip him of his firearms pending a final

---

[1] *See generally* Everytown for Gun Safety Support Fund & Johns Hopkins Ctr. for Gun Violence Solutions, *Promising Approaches for Implementing Extreme Risk Laws: A Guide for Practitioners and Policymakers* 8, 46-48 (May 2023).

hearing. While the ERPO proceedings against Burg were on-going, Burg, along with Plaintiff, the Association of New Jersey Rifle & Pistol Clubs, Inc. (ANJRPC), filed suit here asking this Court to find ERPO unconstitutional. Burg claims ERPO violates his Second Amendment right to keep and bear arms, deprives him of due process of law as required by the Fourteenth Amendment, and violates his Fifth Amendment privilege against self-incrimination. The ANJRPC echoes those claims for its members. Burg brings both facial and as-applied constitutional challenges to ERPO. Burg and the ANJRPC now ask this Court to enter a preliminary injunction to bar the named New Jersey State law enforcement officers from enforcing that law against him (and the ANJRPC's members).

While federal courts have an unwavering obligation to hear cases within their jurisdiction, federalism, comity, and equitable principles sometimes require courts to refrain from doing so. *Younger*[2] abstention is one such time. One Court in this District and the Third Circuit (a non-precedential decision) have already found *Younger* abstention applies to ongoing ERPO proceedings at the state level. *See Greco v. Bruck*, 2022 WL 1515375 (3d Cir. May 13, 2022), *cert. denied*, 143 S. Ct. 735 (2023). This Court finds no reason to deviate from those persuasive decisions, and Burg and the ANJRPC have not convinced it otherwise. By filing this lawsuit in the midst of ongoing ERPO proceedings, Burg and ANJPRC have squarely put this action in *Younger*'s teeth, and so, the Court **DENIES** their preliminary injunction motion.[3] Because *Younger* abstention applies, this Court **DISMISSES** Burg's and ANJRPC's claims seeking declaratory and injunctive relief and **STAYS** their damages claims.

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).
[3] While Both Burg and ANJRPC requested oral argument and recently asked if the Court would entertain oral argument, see Docket No. 15, the Court, having the reviewed the parties' submissions, finds oral argument unnecessary, and thus, the Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

2

I. BACKGROUND

A. The ERPO Process

The ERPO allows, among others, law enforcement officers to petition a court for a protective order to disarm an individual who poses a danger to themselves or others "by having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J. Stat. Ann. § 2C:58-23(a). That process proceeds in two stages: a temporary extreme risk protective order (TERPO) and a final extreme risk protective order (FERPO). *Id.* §§ 2C:58-23, -24. TERPO proceedings are *ex parte* and heard quickly. *Id.* § 2C:58-23(a). A law enforcement officer seeking a TERPO must submit an affidavit outlining the facts establishing, or the reasons for believing, the "grounds" for a protective order, and information about firearms the officer believes the respondent controls or possesses. *Id.* § 2C:58-23(b). Before issuing a TERPO, a court must examine the law enforcement officer and any witness the officer produces under oath. *Id.* § 2C:58-23(d). Instead of live testimony, the court may "rely on an affidavit submitted in support of the petition." *Id.*

If the court finds "good cause to believe that the respondent poses an immediate and present danger of causing bodily injury" to themselves or others by having, possessing, controlling, or receiving a firearm, the court must issue a TERPO to either disarm the respondent or prevent him or her from acquiring a firearm. *Id.* § 2C:58-23(e). When deciding to issue a TERPO, the court must consider several statutory criteria, like, among other things, "any history of threats or acts of violence by the respondent directed toward self or others[,]" "any history of use, attempted use, or threatened use of physical force by the respondent against another person[,]" "prior arrests, pending charges, and convictions for a violent indictable crime or disorderly persons offense," and so on. *Id.* § 2C:58-23(f) (listing eight

3

statutory criteria). Once issued, the TERPO prohibits the respondent from, among other things, having, controlling, possessing, purchasing, or receiving a firearm while the order is in place. *Id.* § 2C:58-23(g). The TERPO also requires the respondent to surrender his or her firearms or any firearm purchaser permits (like a firearm identification card or a permit to buy a handgun). *Id.* On top of a TERPO, the court may issue a search warrant if the TERPO petition reveals the respondent owns or possesses a firearm. *Id.* § 2C:58-26(b).

If a court issues a TERPO, then the court must hold a hearing for a FERPO within 10 days of the TERPO petition. *Id.* § 2C:58-24(a). The ERPO and implementing New Jersey judiciary directive provide respondents extensive rights at the FERPO hearing. New Jersey Courts, Administrative Office of the Courts, *Directive # 19-19: Guidelines for Extreme Risk Protective Orders* Attach. 1 at 10 (Guideline 5) (August 2019), available at: https://www.njcourts.gov/attorneys/directives/19-19 (last visited Dec. 23, 2024). Indeed, a respondent has the rights to be present at the hearing, testify, present witnesses, offer evidence, cross-examine any witnesses who appear at the hearing, and "to otherwise present information." *Id.* When deciding to issue a FERPO, the court must consider the same statutory criteria it did when issuing a TERPO, *i.e.* prior history of threats or violence, "as well as any other relevant evidence." N.J. Stat. Ann. § 2C:58-24(c). If the court finds, by the preponderance of the evidence, that the respondent "poses a significant danger of bodily injury to the respondent's self or others" by having, possessing, purchasing, or receiving a firearm, the court must issue a FERPO. *Id.* § 2C:58-24(b). A FERPO prohibits the respondent "from having custody or control of, owning, purchasing, possessing, or receiving a firearm." *Id.* § 2C:58-24(d).

4

After the court issues a FERPO, the respondent has 45 days to appeal that decision. N.J. Ct. R. 2:2-3(a)(1). In addition, ERPO allows a respondent subject to a FERPO to seek relief from that order at anytime. N.J. Stat. Ann. § 2C:58-25. Indeed, a court may terminate a FERPO if the respondent shows, by the preponderance of the evidence, that he or she "no longer poses a significant danger of causing bodily injury" to themselves or others "by having custody or control of, owning, possessing, purchasing, or receiving a firearm." *Id.*

**B. The Road Rage Incident, the TERPO against Burg, and Burg's Lawsuit**

The facts surrounding the TERPO filed against Burg are straightforward. In short, Burg and another motorist were involved in a road-rage incident. [Decl. of David L. Burg (Burg Decl.) ¶¶ 16-26 (Docket No. 7-1).] While Burg claims the other motorist instigated that incident, *see id.*, Burg admits that he pointed his pistol at the other motorist, *see id.* ¶¶ 27-28. [*See also* Certification of Anthony Dzugan (Dzugan Cert.) ¶ 3, Ex. A (Docket No. 13).] After Burg brandished his firearm, the other motorist drove off. [Burg Decl. ¶ 28.] The other motorist then called the police to report what happened and provided the license plate to Burg's vehicle. [Dzugan Cert. ¶ 2.] After speaking with the motorist and reviewing surveillance footage, the New Jersey State Police (NJSP) determined that Burg was the driver involved in the incident. [*Id.* ¶¶ 2-3.] When a civilian makes a complaint, NJSP run a database check to confirm if the suspect's description matches the one provided by the victim, and to determine whether the suspect owns any weapons, or has a firearms identification card or a concealed carry permit. [*Id.* ¶ 6.] After a database search, NJSP determined that Burg's driver license picture matched the description provided by the other motorist. [*Id.* ¶ 7.] That search also revealed that Burg has both a firearms identification card and a concealed carry permit and owns a Glock handgun. [*Id.*]

5

Based on the investigation, the NJSP sought and obtained a TERPO against Burg and an accompanying search warrant. [*Id.* ¶¶ 13-14, Ex. D.] That same day, NJSP served the TERPO on Burg and executed the warrant. [*Id.* ¶ 15.] After receiving his *Miranda* warnings, Burg surrendered his firearms to NJSP. [*Id.* ¶¶ 15, 17.] NJSP troopers later interviewed Burg about the altercation he had with the motorist. [*Id.* ¶¶ 19-20, Exs. A, E.] During that interview, Burg admitted to pointing his firearm at the other motorist. [*Id.* ¶ 3, Ex. A.] Burg told the troopers, "I had my concealed carry which I do not carry chambered. But I carry with a magazine in and I pulled it out and I put it on my lap and he was not going . . . Finally I pulled it up and pointed it and said 'leave me the fuck alone' and he left." [*Id.*, Ex. A at 6.] Burg estimates he pointed his gun at the motorist for "maybe 5 seconds." [*Id.*] Following the interview, NJSP charged Burg with weapons offenses and aggravated assault. [*Id.*, Ex. A at 7; *see also* Cert. of Assistant Prosecutor Jessica Sparano (Sparano Cert.) ¶ 5, Ex A. (New Jersey Summons-Complaint filed against Burg) (Docket No. 12-1).]

When issuing the TERPO, the state court judge set a hearing for a FERPO within 10 days of NJSP's TERPO petition. [Dzugan Cert. ¶ 14, Ex. D at 3.] At the final hearing, the state court adjourned the matter to allow Burg time to secure counsel given the pending criminal charges against him. [Burg Decl. ¶ 49, Ex. D (FERPO Hr'g Tr.) (Docket No. 7-4).] After Burg secured counsel, Burg moved to dismiss the FERPO proceedings on jurisdictional grounds. [Sparano Cert. ¶ 9, Ex. B.] In his reply brief, Burg argued ERPO is unconstitutional under the Second Amendment given the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). [*Id.* ¶ 11, Ex. D (Docket No. 12-4).] The state court ultimately denied Burg's motion. [*Id.* ¶¶ 12-13.] The state court then scheduled the FERPO hearing for mid-November 2024. [Cert. of Assistant Prosecutor Travis Clark (Clark

6

Cert.) ¶ 5 (Docket No. 11).] Meanwhile, Burg's criminal prosecution has been ongoing. [*Id.* ¶ 8.]

Before the rescheduled FERPO hearing, Burg and the ANJRPC filed suit here claiming ERPO is unconstitutional. [*See generally* Compl. (Docket No. 1).] They argue ERPO violates the Second Amendment, the Due Process Clause of the Fourteenth Amendment, and the Fifth Amendment's privilege against self-incrimination. [*Id.* ¶¶ 144-57, 159-67, 169-73.] They seek declaratory and injunctive relief, as well as monetary damages. [*Id.* ¶¶ 175-76, Prayer for Relief.] Burg and the ANJRPC now move for a preliminary injunction to bar the Defendant law enforcement officers from enforcing ERPO during the pending of this lawsuit.[4] [Docket No. 7.] Given this litigation, the parties agreed to adjourn the FERPO hearing until early January 2025. [Docket No. 4.]

## II. DISCUSSION

While Burg and the ANJRPC make many arguments for a preliminary injunction, see Pls.' Mem. of Law in Supp. Mot. for Prelim. Inj. 32-40 (Docket No. 7-5), the State counters, arguing the *Younger* abstention doctrine requires this Court to sit this one out, see Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. 12-22 (State Opp'n Br.) (Docket No. 10). Pointing to the Third Circuit's decision in *Greco*, the State contends ERPO proceedings qualify as quasi-criminal civil enforcement proceedings that trigger *Younger* abstention. [*Id.* at 15-19.] The Court agrees.

When a case falls within a federal court's jurisdiction, the court's "'obligation' to hear and decide [it] is 'virtually unflagging[,]'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)), and

---

[4] The Court collectively refers to all Defendants as the State.

"[p]arallel state-court proceedings do not detract from that obligation[,]"*id.* But in certain "exceptional" cases, federal courts must refrain from deciding the case. *Id.* at 78 (citation and internal quotation marks omitted). Born from federalism, comity, and equitable principles, the *Younger* abstention doctrine bars federal courts from deciding cases related to certain ongoing state-court proceedings. *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023). The doctrine applies only to three categories of ongoing state-court proceedings: (1) criminal prosecutions; (2) "quasi-criminal civil enforcement actions[;]" and (3) "civil lawsuits with orders that are uniquely in furtherance of a state court's ability to perform its judicial functions." *Id.* (citing *Sprint*, 571 U.S. at 78). Where, as here, the State claims that ERPO proceedings are quasi-criminal civil enforcement proceedings, see State Opp'n Br. at 12-13, courts must examine:

> (i) Whether the proceeding was initiated by a state in its sovereign capacity;
>
> (ii) Whether the proceeding sought to sanction the federal plaintiff as retribution for a violation of a legal right or duty; and
>
> (iii) Whether the proceeding has another striking similarity with a criminal prosecution, such as by beginning with a preliminary investigation that culminates with the filing of formal charges or by the state's ability to sanction the federal plaintiff's conduct through a criminal prosecution.

*Borowski*, 68 F.4th at 851 (collecting cases).

If the state court litigation qualifies as a quasi-criminal civil enforcement proceeding, federal courts must then examine three more factors—called the "*Middlesex* factors"—before invoking *Younger* abstention and refraining from hearing the federal case. *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 883 (3d Cir. 2020) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *see also Sprint*,

8

571 U.S. at 81 (explaining the *Middlesex* factors are "additional factors" not to be "[d]ivorced from the quasi-criminal context"); *Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities*, 26 F.4th 571, 576 (3d Cir. 2022). The *Middlesex* factors require courts to consider "whether: (1) there are ongoing . . . judicial proceeding[s]; (2) the proceedings implicate important state interests; and (3) the party against whom abstention is asserted has an adequate opportunity in the state proceeding[] to raise constitutional challenges." *Altice*, 26 F.4th at 578 (alterations and omission in original, internal quotation marks omitted) (quoting *Middlesex*, 457 U.S. at 432).

Applying those principles, a Third Circuit panel has already found ERPO proceedings are quasi-criminal civil enforcement proceedings and the *Middlesex* factors favor *Younger* abstention. *Greco*, 2022 WL 1515375, at *2-4. There, as here, Greco (the respondent in an ongoing ERPO proceeding), was subject to a TERPO and filed his federal lawsuit before the FERPO hearing. *Id.* at *2. Like Burg, Greco challenged ERPO's constitutionality, arguing the law violated several constitutional protections, like the Second and Fourteenth Amendments. *Id.* He too moved for a preliminary injunction. *Id.* The District Court denied that motion and later dismissed the case based on *Younger* abstention. *Id.*

In affirming the District Court, the Third Circuit found the ERPO proceeding qualified as a quasi-criminal civil enforcement proceeding because: (1) a state law enforcement agency started the proceeding; (2) law enforcement "sought to temporarily seize Greco's firearms as a sanction for posing an immediate and present danger to others[;]" and (3) the ERPO proceeding has "similarities with criminal proceedings" since it started from a law enforcement investigation and involved a search warrant. *Id.* at *3. Turning to the *Middlesex* factors, the *Greco* court concluded the ERPO proceeding was "ongoing and judicial in nature." *Id.* The court also found ERPO proceedings "implicate an important state

9

interest"—that is, the protection of New Jerseyans from a person who poses a danger to themselves or others. *Id.* (citation omitted). Lastly, the court held ERPO proceedings allow respondents to raise constitutional challenges. *Id*.

Burg and the ANJRPC ask this Court to ignore *Greco*, arguing the decision is not binding and the Third Circuit got it wrong. [Pls.' Reply Mem. of Law in Supp. Mot. for Prelim. Inj. 2 (Pls.' Reply Br.) (Docket No. 14).] True, *Greco* is a non-precedential decision and does not bind this Court, but the decision is still highly persuasive. *United States v. Barney*, 792 F. Supp. 2d 725, 729 (D.N.J. 2011) ("[D]istrict courts may rely on non-precedential opinions as strongly persuasive authority."), *aff'd*, 672 F.3d 228 (3d Cir. 2012); *see also Kane v. Prof'l Med. Mgmt. Inc.*, 2016 WL 5012320, at *3 (D.N.J. Sept. 16, 2016). And Burg and the ANJRPC have not convinced this Court to deviate from *Greco*'s reasoning.

In any event, like the *Greco* court, this Court too finds the ERPO proceedings against Burg are quasi-criminal civil enforcement proceedings and the *Middlesex* factors favor abstention.

### A. ERPO Proceedings are Quasi-Criminal Civil Enforcement Proceedings

First, NJSP, as an arm of New Jersey, started the ERPO proceedings against Burg by seeking and obtaining the TERPO against him. [Dzugan Cert. ¶¶ 13-14, Ex. D.] There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000). So, New Jersey started the ERPO proceedings against Burg in its sovereign capacity. *See Sprint*, 571 U.S. at 79 (explaining that "a state actor is routinely a party to the state proceeding and often initiates the action"); *see also Greco v. Grewal*, 2020 WL 7334194, at *4 (D.N.J. Dec. 11, 2020) (finding TERPO

proceeding initiated by state actor when New Jersey Department of Homeland Security Officer filed the TERPO petition), *aff'd sub nom.*, *Greco v. Bruck*, 2022 WL 1515375 (3d Cir. May 13, 2022). In addition, the Monmouth County Prosecutor's Office is enforcing ERPO by seeking a FERPO against Burg. [Sparno Cert. ¶ 6; Clark Cert. ¶¶ 4-5.]

Second, to determine whether ERPO proceedings are quasi-criminal, courts must determine whether the State brought an ERPO proceeding "to sanction the federal plaintiff from some wrongful act." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). "*Sprint* teaches that a suit is meant to punish wrongdoing where the state court defendant (the federal plaintiff) violated a legal right or duty." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 892 (3d Cir. 2022). ERPO proceedings have both preventive and retribution purposes. Indeed, the law is designed to disarm individuals who pose a danger to themselves or others. N.J. Stat. Ann. §§ 2C:58-23, -24. Unquestionably, threatening the public's safety is a wrongful act. *See Greco*, 2020 WL 7334194, at *5. NJSP sought a TERPO against Burg because he pointed his pistol at another motorist during a road rage altercation. Thus, the NJSP started the ERPO proceedings against Burg to sanction that conduct by prohibiting him from possessing a firearm.

Lastly, ERPO proceedings have other "striking similarit[ies]" to a criminal prosecution. *Borowski*, 68 F.4th at 851. The ERPO proceedings against Burg started after NJSP received a civilian complaint from the motorist. That led to NSJP taking the motorist's statement, investigating Burg, and canvassing the area of the altercation for corroborating evidence. After learning Burg has a concealed carry permit and owns a handgun, NJSP drafted the TERPO petition and submitted it for court approval, which is like the filing of a criminal complaint. In addition, the state court judge issued a search warrant with the

11

TERPO. Those sequence of events and features of ERPO bear the hallmarks of many criminal prosecutions. *See Greco*, 2022 WL 1515375, at *3.

All and all, the ERPO proceedings against Burg are a quasi-criminal civil enforcement proceeding. *See id.*

### B. The *Middlesex* Factors

The *Middlesex* factors favor abstention.

First, ERPO proceedings are judicial. To determine whether a state proceeding is judicial, courts look to whether the proceeding is "initiated by a complaint, adjudicative in nature, governed by court rules or rules of procedure, . . . employ legal burdens of proof" and provides for judicial review. *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009). ERPO proceedings have many of those features. Indeed, they are triggered by the filing of a TERPO petition. N.J. Stat. Ann. § 2C:58-23(a). The state court can only issue a protective order after the petitioner has met a legal burden of proof—"good cause" for a TERPO, *id.* § 2C:58-23(e), and "preponderance of the evidence" for a FERPO, *id.* § 2C:58-24(b). And after the court issues a FERPO, the respondent can appeal that decision to New Jersey's Appellate Division. N.J. Ct. R. 2:2-3(a). All agree Burg filed this action while the ERPO proceedings against him were ongoing. So the first *Middlesex* factor supports abstention.

Second, ERPO proceedings "implicate an important state interest." *Altice*, 26 F.4th at 578. Indeed, ERPO seeks to protect New Jerseyans by disarming individuals found to pose an "immediate and present danger" to themselves or others. N.J. Stat. Ann. § 2C:58-23(e). Burg doesn't dispute that "New Jersey has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety." *Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1

(2022); *see also Greco*, 2022 WL 1515375, at *3. Thus, the second *Middlesex* factor favors abstention.

Lastly, respondents in ERPO proceedings have a chance to present constitutional challenges. *Altice*, 26 F.4th at 578. Burg shoulders the burden to show "that state procedural law barred presentation of [his] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (brackets in original) (quoting *Moore v. Sims,* 442 U.S. 415, 432 (1979)). Nothing in ERPO prevents Burg from raising a constitutional challenge to the law or its proceedings. *Greco*, 2022 WL 1515375, at *3. In fact, Burg raised a Second Amendment challenge when moving to dismiss the ERPO proceedings on jurisdictional grounds. [Sparano Cert. ¶ 11, Ex. D.] Therefore, the last *Middlesex* factor supports abstention. So this Court will abstain.[5]

---

[5] *Younger* abstention can reach a federal plaintiff's claims even when that plaintiff was a stranger to the state court proceeding. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975) (explaining that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them"); *see also Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881 (8th Cir. 2002) ("It is not a prerequisite to *Younger* abstention that the federal plaintiffs also be defendants in the action pending in state court."). The State contends that *Younger* abstention applies to ANJRPC because its interests "are so inextricably intertwined" with Burg's interests that "direct interference" with the ERPO proceedings against Burg "is inevitable." [State Opp'n Br. at 19-20 (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82-83 (2d Cir. 2003)).] The State points out that ANJRPC's claims associational (or representative) standing by bringing its claims on behalf of its members. [*Id.* at 20 (citing Compl. ¶ 21).] The State explains that ANJRPC has only specifically identified Burg as one of its members, and the pending ERPO proceeding that ANJRPC complains about is the one pending against Burg. [*Id.* at 20-21.] And the State argues both Burg and the ANJRPC seek identical relief. [*Id.* at 21.] Thus, the State contends this Court should abstain from adjudicating ANJRPC's claims because doing so would interfere with the ongoing ERPO proceedings against Burg. [*Id.* at 22.]

Neither Burg nor ANJRPC have addressed those arguments in their reply brief. By not doing so, they have conceded those arguments. *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("Mr. Lee's failure to respond to the pertinent opposition-brief argument acts as a concession of that argument."); *see also Heckman v. N. Penn Comprehensive Health Servs.*, 2024 WL 4009639, at *17 (M.D. Pa. Aug. 30, 2024) ("The failure to respond to an issue where a party has filed a [reply] brief is, as a practical matter, a concession of the issue."). In any event, the Eighth Circuit applied *Younger* abstention to an organizational-plaintiff seeking to represent its members' interests, like ANJRPC does here, because there, like here, the organizational-plaintiff alleged "standing based on injuries that are either directly or indirectly derivative of those of the [named] [p]laintiffs" who were parties to the state-court actions. *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1253 (8th Cir. 2012).

### C. Outcome: Stay or Dismissal

"When a quasi-criminal civil enforcement proceeding satisfies the *Middlesex* conditions, *Younger* abstention applies, and that leads to two possible dispositions: dismissal or a stay." *Borowski*, 68 F.4th at 850. Normally, when *Younger* abstention applies, federal courts must dismiss the federal case if it only seeks injunctive or declaratory relief. *Id.* (collecting cases). But if the federal action seeks only money damages, federal courts "cannot dismiss the suit but may, in the exercise of its discretion, stay the case for the pendency of the state proceeding." *Id.*; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (explaining that "while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions"). Where, as here, the plaintiff seeks declaratory and injunctive relief, as well as monetary damages, federal courts have discretion to "not only . . . stay the damages claim but also to dismiss any claims for injunctive and declaratory relief outright or to stay them, potentially alongside the stayed claim for damages." *Borowski*, 68 F.4th at 850; *see also Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) ("[A] district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings." (quoting *Williams v. Hepting,* 844 F.2d 138, 144-45 (3d Cir.1988))); *Grivas v. City of Lancaster*, 2024 WL 2874555, at *4 (E.D. Pa. June 7, 2024) (dismissing claims for injunctive relief but staying claims for monetary damages where *Younger* abstention applied).

14

Because *Younger* abstention applies, this Court will dismiss Burg's and ANJRPC's claims for injunctive and declaratory relief. The Court will stay their claims for monetary damages.

## III. CONCLUSION

For the above reasons, the Court **DENIES** Burg's and the ANJRPC's motion for preliminary injunction (Docket No. 7). An accompanying Order of today's date shall issue.

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

Dated: December 23, 2024